OPINION
{¶ 1} Plaintiff-Appellee Shirley Neal bought the underlying cause of action on her own behalf and as executrix of the estate of Arthur Neal, against sixty-two companies that had allegedly supplied asbestos-containing products to workplaces frequented by Neal's husband, Arthur. Neal alleged in the complaint that Arthur had significant exposure to asbestos and/or asbestos-containing products during 23 years of employment as a sheet-metal worker and laborer. Neal further alleged that Arthur had developed asbestos-related lung diseases and had died in September 2002, as a direct and proximate result of his exposure to asbestos and the defendants' tortious acts. The causes of action in the complaint included negligence, negligent misrepresentation, strict liability, breach of warranty, fraudulent concealment and misrepresentation, products liability, and conspiracy.[1]
 {¶ 2} Defendants-Appellants appeal from an order of the trial court holding 2003 *Page 3 
Am. Sub. H.B. 292 unconstitutional, as applied.[2] The trial court concluded that H.B. 292 violates Ohio's constitutional ban on retroactive legislation.
 {¶ 3} H.B. 292 became effective in September 2004, after Neil's complaint was filed. H.B. 292 was intended to reform the current system of asbestos personal injury litigation, which the Ohio General Assembly characterized as:
 {¶ 4} "* * * unfair and inefficient, imposing a severe burden on litigants and taxpayers alike. A recent RAND study estimates that a total of $54 billion have already been spent on asbestos litigation and the costs continue to mount. Compensation for asbestos claims has risen sharply since 1993. The typical claimant in an asbestos lawsuit now names 60 to 70 defendants, compared with an average of 20 named defendants two decades ago. The RAND Report also suggests that at best, only ½ of all claimants have come forward and at worst, only 1/5 have filed claims to date. Estimates of the total cost of all claims range from $200 billion to $265 billion. Tragically, plaintiffs are receiving less than 43¢ on every dollar awarded, and 65% of the compensation paid, thus far, has gone to claimants who are not sick." Uncodified law, Section 3(A)(2), accompanying H.B. 292.
 {¶ 5} According to the General Assembly, "Ohio has become a haven for asbestos claims and, as a result, is one of the top five state court venues for asbestos filings." Id. at Section 3(A)(3)(b). At the time H.B. 292 was being considered, Ohio had 35,000 pending cases, and dockets were increasing at an exponential rate. For example, between 1999 and 2003, the number of pending asbestos cases increased *Page 4 
from 12,800 to 39,000, and 200 new asbestos cases were being filed in Cuyahoga County every month. Id. at Section 3)(A)(3)(b)-(e).
 {¶ 6} The General Assembly also noted that "[nationally, asbestos personal injury litigation has already contributed to the bankruptcy of more than 70 companies, including nearly all manufacturers of asbestos textile and insulation products, and the ratio of asbestos-driven bankruptcies is accelerating. * * * At least five Ohio-based companies have been forced into bankruptcy because of an unending flood of asbestos cases brought by claimants who are not sick." Id. at Section (4) and (4)(c). This, in turn, affects workers for the bankrupt companies.
 {¶ 7} The General Assembly further concluded that the vast majority of claims are filed by individuals who allege exposure to asbestos and may have some physical signs of exposure, but do not have an asbestos-related impairment. Id. at Section 5. Accordingly, the General Assembly developed a system in which claimants must meet certain prima facie requirements in order to maintain tort actions that involve asbestos claims. If the trial court finds that a claimant cannot meet this prima facie burden, the court must administratively dismiss the claim without prejudice. R.C. 2307.93(A)(3)(c).
 {¶ 8} In June 2005, Neal filed a motion to prove a prima facie case, but ultimately admitted that she could not meet the requirements of H.B. 292. Neal contended that H.B. 292 was unconstitutional as applied, and that her evidence met the standards that had been previously applied to asbestos cases.
 {¶ 9} The trial court agreed with Neal that H.B. 292's prima facie case requirement could not constitutionally be applied. The trial court also rejected the defendants' contention that under pre-existing law [R.C. 2305.10(B)(5)], claimants must *Page 5 
comply with certain elements or face dismissal. The court noted that the Ohio Rules of Civil Procedure already incorporate such a standard, and permit cases to be dismissed for failure to state a claim. According to the trial court, R.C. 2305.10(B)(5) is concerned solely with statute of limitations issues or accrual of legally cognizable asbestos claims. Under R.C. 2305.10(B), claims accrue on the date plaintiffs are informed by competent medical authority that they have been injured by exposure to asbestos. Alternatively, claims can accrue on the date plaintiffs should have become aware, with reasonable diligence, that they were injured by exposure. The trial court concluded that Neal did not have to demonstrate causation, and that Neal had submitted sufficient evidence to establish the accrual of a wrongful death action related to asbestos exposure. The trial court entered an order accordingly. Defendants-appellants appeal from this order.
 {¶ 10} Defendants-appellants contend that the trial court erred in concluding that R.C. 2307.92 and R.C. 2307.93 are incompatible with Ohio's constitutional prohibition against retroactive laws. Defendants-appellants also contend that the trial court erred in finding that Neal submitted sufficient evidence to demonstrate an accrued cause of action for asbestos injury.
 {¶ 11} We conclude that the trial court was incorrect in finding that R.C. 2307.92 and R.C. 2307.93 cannot be retroactively applied. UnderAckison v. Anchor Packing Co., Slip Opinion No. 2008-Ohio-5243,2008 WL 4601676, these statutes do not impair substantive rights, and therefore do not run afoul of the prohibition against retroactive laws found in Section 28, Article II of the Ohio Constitution. Furthermore, in view of this conclusion, the trial court's alleged error in applying pre-existing law is moot. Neal admitted that she cannot prove a prima facie case under H.B. 292, and as a result, the *Page 6 
trial court's only option is to administratively dismiss the case, without prejudice. Accordingly, the trial court's decision is Reversed and this cause is Remanded for further proceedings.
 I {¶ 12} Appellants' First Assignment of Error is as follows:
 {¶ 13} "THE TRIAL COURT ERRED BY CONCLUDING THAT R.C. 2307.92 AND2307.93 ARE INCOMPATIBLE WITH OHIO'S CONSTITUTION."
 {¶ 14} Appellant Owens-Illinois Inc. has filed a separate brief, which mentions one assignment of error and two issues. Owens-Illinois's sole assignment of error is as follows:
 {¶ 15} "THE OHIO GENERAL ASSEMBLY ENACTED AM. SUB. H.B. 292 (`HB 292') TO CLARIFY AND REFORM CERTAIN ASPECTS OF ASBESTOS LITIGATION. IT CLARIFIED EXISTING LAW BY DEFINING PREVIOUSLY-UNDEFINED TERMS USED IN THE 1980 ASBESTOS-CLAIM-ACCRUAL STATUTE. IT REFORMED ASBESTOS LITIGATION BY ADDING A NEW PROCEDURE FOR AUTOMATIC EARLY SCRUTINY OF THE VALIDITY OF CLAIMS — REQUIRING PLAINTIFFS TO MAKE A PRIMA FACIE SHOWING OF A VALID CLAIM, AND PROVIDING FOR `ADMINISTRATIVE DISMISSAL' IF THEY FAIL TO MEET EITHER THE NEWLY-DEFINED CRITERIA OR (IF APPLICATION OF THOSE CRITERIA TO EXITING CLAIMS WOULD BE UNCONSTITUTIONAL) THE STANDARDS OF PRIOR LAW. THE TRIAL COURT BELOW ERRED BY HOLDING THE STATUTE'S NEWLY-DEFINED CRITERIA UNCONSTITUTIONALLY RETROACTIVE, AND BY DECLINING *Page 7 
TO ADMINISTRATIVELY DISMISS THE PLAINTIFF'S CLAIM DESPITE THE PLAINTIFF'S FAILURE TO MAKE A PRIMA FACIE SHOWING EITHER UNDER THE NEWLY-DEFINED CRITERIA OR UNDER PRIOR LAW."
 A. Requirements under H.B. 292 {¶ 16} H.B. 292 is codified at R.C. 2307.91 through R.C. 2307.98, and establishes various criteria for asbestos claims. R.C. 2307.91 contains definitions of terms used in H.B. 292. R.C. 2307.92 outlines minimum medical requirements for tort actions alleging asbestos claims. R.C. 2307.92(B), (C), and (D), respectively, prohibit plaintiffs from maintaining tort actions for: (1) asbestos claims based on non-malignant conditions; (2) asbestos claims based "upon lung cancer of an exposed person who is a smoker"; and (3) asbestos claims based on wrongful death, unless the plaintiffs in each of these situations can establish a prima facie showing in the manner described in R.C. 2307.93(A).
 {¶ 17} The claims in the present case involve the wrongful death and lung cancer of an exposed person who was arguably a smoker as defined by the Act. Accordingly, R.C. 2307.92(D) applies, as it deals with wrongful death. R.C. 2307.92(C), which covers claims involving smokers who have lung cancer, potentially applies, although its application is somewhat questionable, at least on the present record.[3] Both *Page 8 
R.C. 2307.92(D) and (C) contain similar provisions. R.C. 2307.92(D)(1) states, in pertinent part, that:
 {¶ 18} "No person shall bring or maintain a tort action alleging an asbestos claim that is based upon a wrongful death, as described in section 2125.01 of the Revised Code of an exposed person in the absence of a prima-facie showing, in the manner described in division (A) of section 2307. 93 of the Revised Code, that the death of the exposed person was the result of a physical impairment, that the death and physical impairment were a result of a medical condition, and that the deceased person's exposure to asbestos was a substantial contributing factor to the medical condition. That prima-facie showing shall include all of the following minimum requirements:
 {¶ 19} "(a) A diagnosis by a competent medical authority that exposure to asbestos was a substantial contributing factor to the death of the exposed person;
 {¶ 20} "(b) Evidence that is sufficient to demonstrate that at least ten years have elapsed from the date of the deceased exposed person's first exposure to asbestos until the date of diagnosis or death of the deceased exposed person. The ten-year latency period described in this division is a rebuttable presumption, and the plaintiff has the burden of proof to rebut the presumption.
 {¶ 21} "(c) Either of the following:
 {¶ 22} "(i) Evidence of the deceased exposed person's substantial occupational *Page 9 
exposure to asbestos;
 {¶ 23} "(ii) Evidence of the deceased exposed person's exposure to asbestos at least equal to 25 fiber per cc years as determined to a reasonable degree of scientific probability by a scientifically valid retrospective exposure reconstruction conducted by a certified industrial hygienist or certified safety professional based upon all reasonably available quantitative air monitoring data and all other reasonably available information about the deceased exposed person's occupational history and history of exposure to asbestos."
 {¶ 24} R.C. 2307.92(C) contains essentially the same requirements, with the only language differences being word changes relating to lung cancer and smoking, rather than wrongful death. For example, R.C. 2307.92(C)(1)(a) states that there must be a "diagnosis by a competent medical authority that the exposed person has primary lung cancer and that exposure to asbestos is a substantial contributing factor to the death of the exposed person."
 {¶ 25} In order to make the required prima facie showing under R.C. 2307.93(A), plaintiffs must file a written report and supporting test results "constituting prima facie evidence of the exposed person's physical impairment that meets" the minimum requirements in R.C. 2307.92. After the plaintiffs prima facie case is filed, the defendants may challenge the adequacy of the prima facie evidence. If the defendants make such a challenge, the trial court resolves the issue by applying summary judgment standards. R.C. 2307.93(B). If the court concludes that the plaintiff has failed to establish a prima facie case, the court must administratively dismiss the action without prejudice. However, the trial court maintains jurisdiction and the plaintiff may reinstate *Page 10 
the action by making a prima-facie showing that meets the minimum requirements of R.C. 2307.92(B), (C), or (D). See R.C. 2307.93(C).
 {¶ 26} H.B. 292 also provides for application of prior law if the prima facie case requirement is deemed unconstitutionally retroactive because it impairs a substantive right and the impairment otherwise violates Section 28, Article II, of the Ohio Constitution. R.C. 2307.93(A)(3)(a). In this situation, the trial court "shall determine whether the plaintiff has failed to provide sufficient evidence to support the plaintiff's cause of action or the right to relief under the law that is in effect prior to the effective date of this section." R.C. 2307.93(A)(3)(b). Again, if the trial court finds that the plaintiff has failed to provide sufficient evidence, it must administratively dismiss the claim without prejudice. The plaintiff may reactivate the case by providing sufficient evidence to support the cause of action under the law in effect when the cause of action arose. R.C. 2307.93(A)(3)(c).
 {¶ 27} In the present case, the trial court concluded that H.B. 292 substantially alters substantive rights and cannot be retroactively applied. The trial court, therefore, applied prior law, and found that Neal had supplied sufficient evidence to maintain her claim. In reaching its decision on retroactivity, the court concluded that the following items in H.B. 292 are not mere clarifications of previously undefined law, but impose new burdens or obligations: (1) the definition of "competent medical authority"; (2) the definition of "substantial contributing factor"; and (3) the requirement of a "substantial occupational exposure."
 B. General Principles of Retroactivity *Page 11 {¶ 28} "Any constitutional analysis must begin with the presumption of constitutionality enjoyed by all legislation, and the understanding that it is not this court's duty to assess the wisdom of a particular statute." Groch v. Gen. Motors Corp., 117 Ohio St.3d 192, 217,2008-Ohio-546, 883 N.E.2d 377, at ¶ 141. To decide if legislation is unconstitutionally retroactive, the court first determines" whether the General Assembly expressly intended the statute to apply retroactively. * * * If so, the court moves on to the question of whether the statute is substantive, rendering it unconstitutionally retroactive, as opposed to merely remedial." Bielat v. Bielat, 87 Ohio St.3d 350, 353,2000-Ohio-451, 721 N.E.2d 28.
 {¶ 29} A retroactive statute is unconstitutional "if it impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction." 87 Ohio St.3d at 354. Appellants contend that the trial court erred by failing to account for authority that restricts vested rights to matters that possess a strength akin to a final judgment, rather than a mere expectancy. In this regard, Appellants contend that Neal had no right to the procedures used to evaluate asbestos cases, simply because she filed suit prior to H.B. 292's effective date.
 {¶ 30} Merely remedial statutes do not offend Section 28, Article II
of the Ohio Constitution. The definition of "remedial" for purposes of analysis under Section 28, Article II of the Ohio Constitution has been rendered somewhat problematic by two recent decisions of the Ohio Supreme Court rendered two weeks apart, on October 1, 2008, and on October 15, 2008, respectively, in which the word "remedial," in the context of the Ohio constitutional prohibition against retroactive laws, has been defined inconsistently. The first of these — State v.Ferguson, 120 Ohio St.3d 7, 2008-Ohio-4824-defined *Page 12 
"remedial" in this context as opposed to punitive, the familiar dichotomy employed in analyzing issues under the Ex Post Facto clause of the United States Constitution, Article I, Section 10. InFerguson, the court held that the statutory enactment under consideration was "a remedial, regulatory scheme designed to protect the public rather than to punish the offender." Id., at 15.
 {¶ 31} After State v. Ferguson, supra, it was logical to assume that the prohibition against retroactive laws contained in Section 28, Article II, of the Ohio Constitution would no longer have any application to civil statutory enactments, since they are, by definition, designed to remedy social ills, rather than to punish offenders.
 {¶ 32} But, just two weeks later, Ackison v. Anchor PackingCompany, Ohio St.3d, 2008-Ohio-5243, was decided. That decision, without commenting on the contrary definition of "remedial" in the context of Section 28, Article II, of the Ohio Constitution set forth in theFerguson case that it had decided just two weeks earlier, returned to the customary definition of "remedial" that was applied before State v.Ferguson:
 {¶ 33} "`A statute is "substantive" if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction, or creates a new right. * * * Conversely, remedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right.' [State v.] Cook (1998), 83 Ohio St.3d at 411,700 N.E.2d 570, citing Van Fossen [v. Babcock Wilcox Co. (1988)],36 Ohio St.3d at 107, 522 N.E.2d 489." Ackison v. Anchor Packing Company, supra, ¶ 15. *Page 13 
 {¶ 34} That the definition of "remedial" in Ackison is inconsistent with the definition of "remedial" in Ferguson is evident from the fact that employing the Ackison definition would lead to a different result in Ferguson. Clearly, the additional reporting requirements for sexual offenders required by the statutory enactment under review inFerguson constituted "new or additional burdens, duties, obligations or liabilities as to a past transaction," rendering that enactment other than "remedial" under the Ackison definition.
 {¶ 35} An example of a criminal law enactment that would be "remedial" under the Ackison definition would be the adoption of the requirement, in Crim. R. 12(C)(3), that motions to suppress evidence upon the ground that the evidence was illegally obtained, must be filed before trial. The criminal defendant's right not to have illegally obtained evidence used against the defendant at trial has not been taken away; the requirement that the defendant must move to suppress the evidence before trial merely affects the remedy by which the defendant's right in this regard is to be vindicated. Therefore, this is a remedial statute, and its application to a defendant whose alleged criminal act occurred before its enactment would not offend Section 28, Article II, of the Ohio Constitution.
 {¶ 36} In the case before us, we need not be troubled by the apparent inconsistency between the State v. Ferguson and Ackison v. AnchorPacking Company decisions. The latter decision is both later in time, and directly pertinent to the facts in the case before us, involving, as it does, the retroactive application of R.C. 2307.91, and therefore it must be deemed to control the outcome in the case before us.
 {¶ 37} In Ackison v. Anchor Packing Co., supra, the Ohio Supreme Court first *Page 14 
concluded that the General Assembly had expressly intended the prima facie requirements to apply to cases that were pending on the effective date of H.B. 292. 2008-Ohio-5243, at ¶ 13. The Ohio Supreme Court then concluded that "the requirements in R.C. 2307.92 and 2307.93 are remedial and procedural in nature and are, therefore, not unconstitutionally retroactive." Id. at ¶ 16. The court stressed that:
 {¶ 38} "these two statutes establish `a procedural prioritization' of asbestos-related cases. * * * `Simply put, these statutes create a procedure to prioritize the administration and resolution of a cause of action that already exists. No new substantive burdens are placed on claimants * * *' * * * Instead, the enactments `merely substitute a new or more appropriate remedy for the enforcement of an existing right.'" Id. at ¶ 17 (citations omitted).
 {¶ 39} After making the above statements, the Ohio Supreme Court went on to discuss four specific claims that had been made concerning the alleged substantive changes in pre-H.B. 292 law. These included the following contentions: (1) that before H.B. 292, asbestos-related conditions "were compensable under Ohio law when there was merely an alteration of the lungs (such as `pleural thickening'), irrespective of whether any impairment or disease had developed"; (2) that the definition of "competent medical authority" in R.C. 2307.91(Z) "substantively alters requirements for asbestos claims"; (3) that R.C. 2307.92 alters substantive elements of causation by requiring prima facie evidence that exposure to asbestos was a "substantial contributing factor" to the claimant's medical condition; and (4) that the statutory definition of "substantial occupational exposure" in R.C. 2307.91(GG) cannot be retroactively applied because it is an attempt to adopt a test that the Ohio Supreme Court had previously rejected in *Page 15 Horton v. Harwick Chem. Corp., 73 Ohio St.3d 679, 1995-Ohio-286,653 N.E.2d 1196. Ackison, 2008-Ohio-5243, at ¶ 19, 28, 30, and 50.
 {¶ 40} The trial court in the case before us addressed items (2), (3), and (4), and concluded that R.C. 2307.92 and 2307.93 cannot be applied retroactively. We will briefly discuss these points.
 1. Competent Medical Authority — R.C. 2307.91(Z) {¶ 41} The trial court concluded that the definition of "competent medical authority" in H.B. 292 is substantive because it adds new burdens or obligations. Appellants contend that this change merely clarifies an existing law, R.C. 2305.10(B), which was amended in 1980 to specify when causes of action accrue. Under the statute as amended in 1980, "a cause of action for bodily injury caused by exposure to asbestos or to chromium in any of its chemical forms arises upon the date on which the plaintiff is informed by competent medical authority that he has been injured by such exposure, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured by the exposure, whichever date occurs first." Am. H.B. No. 716, 138 Ohio Laws, Part II, 3412.
 {¶ 42} According to the defendants, the lack of a definition of "competent medical authority" and "bodily injury" in R.C. 2305.10
deprives courts of guidance for evaluating whether asbestos cases should proceed. The defendants further contend that the ambiguity of these terms has produced a volume of asbestos cases that threaten to overwhelm Ohio's judicial system.
 {¶ 43} The prima-facie showing under R.C. 2307.92(D)(1) requires a "diagnosis by a competent medical authority that exposure to asbestos was a substantial *Page 16 
contributing factor to the death of the exposed person." R.C. 2307.91(Z) defines a "competent medical authority" as:
 {¶ 44} "a medical doctor who is providing a diagnosis for purposes of constituting prima-facie evidence of an exposed person's physical impairment that meets the requirements specified in section 2307.92 of the Revised Code and who meets the following requirements:
 {¶ 45} "(1) The medical doctor is a board-certified internist, pulmonary specialist, oncologist, pathologist, or occupational medicine specialist.
 {¶ 46} "(2) The medical doctor is actually treating or has treated the exposed person and has or had a doctor-patient relationship with the person.
 {¶ 47} "(3) As the basis for the diagnosis, the medical doctor has not relied, in whole or in part, on any of the following:
 {¶ 48} "(a) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition in violation of any law, regulation, licensing requirement, or medical code of practice of the state in which that examination, test, or screening was conducted;
 {¶ 49} "(b) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition that was conducted without clearly establishing a doctor-patient relationship with the claimant or medical personnel involved in the examination, test, or screening process;
 {¶ 50} "(c) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical *Page 17 
condition that required the claimant to agree to retain the legal services of the law firm sponsoring the examination, test, or screening.
 {¶ 51} "(4) The medical doctor spends not more than twenty-five per cent of the medical doctor's professional practice time in providing consulting or expert services in connection with actual or potential tort actions, and the medical doctor's medical group, professional corporation, clinic, or other affiliated group earns not more than twenty per cent of its revenues from providing those services."
 {¶ 52} In discussing whether the definition of "competent medical authority" substantively alters evidentiary requirements, the Ohio Supreme Court did not mention R.C. 2305.10, nor did it examine prior law in detail. Instead, in a cursory analysis, the court stated that:
 {¶ 53} "Before the enactment of R.C. 2307.91, the term `competent medical authority' was not defined by either statute or case law. By choosing to define that term, the legislature did not take away Ackison's right to pursue her claim. Nor did the definition alter the quantum of proof necessary for a plaintiff to prevail in an asbestos-related claim. Rather, it merely defined the procedural framework by which trial courts are to adjudicate such claims. The definition of competent medical authority pertains to the witness's competency to testify and is, in essence, more akin to a rule of evidence. As such, it is procedural in nature. Compare Denicola v.Providence Hosp. (1979), 57 Ohio St.2d 115, 11 O.O.3d 290,387 N.E.2d 231 (new statute defining qualifications of expert witnesses in a medical claim is procedural rather than substantive). Therefore, the definition does not alter a vested substantive right possessed by Ackison; she did not have a vested right to have the undefined term *Page 18 
remain undefined." 2008-Ohio-5243, at ¶ 29.
 {¶ 54} We do not agree with the Ohio Supreme Court's analysis, but we are bound to follow it. In Denicola, the Ohio Supreme Court considered newly enacted R.C. 2743.43, which provided that medical witnesses are not competent to give expert testimony on liability issues in medical claims unless they devote three-fourths of their professional time to active clinical practice. 57 Ohio St.2d at 116. The appellants inDenicola conceded at oral argument that the statute was procedural and did not violate Article II, Section 28, of the Ohio Constitution. Id. at 116-17. They argued, however, that the statute was retrospectively applied, in violation of R.C. 1.48, because their case accrued and was filed before the effective date of the new statute.[4] The Ohio Supreme Court rejected this argument, stating that:
 {¶ 55} "R.C. 2743.43 pertains to the competency of a witness to testify, and, consequently, it is of a remedial or procedural nature. Being procedural and not substantive, * * * it cannot be said to have been retrospectively employed in a trial conducted almost a year after its enactment." Id. at 117.
 {¶ 56} Other than making the above statement, the Ohio Supreme Court did not discuss its reasoning for the holding in Denicola. However,Denicola differs from the present case, because R.C. 2743.43 does not directly restrict the ability of a plaintiff to maintain a cause of action; it merely indicates that expert witnesses must meet a particular requirement in order to testify at trial. Some might argue that this is a distinction without a difference, but it is not. The distinction is critical. *Page 19 
 {¶ 57} In cases to which R.C. 2743.43 applies, plaintiffs may select from any number of potential expert witnesses who may agree to review an existing medical claim and testify at trial. These experts do not have to be doctors who have treated the plaintiff. In addition, the restriction does not necessarily reach into the past and affect transactions that have already occurred. More importantly, the restriction, by its very nature, does not completely prevent a plaintiff from complying with its requirements. In contrast, the requirements in R.C. 2307.92 and R.C. 2307.91(Z) are extensive, and affect past transactions. A specific example illustrates this point.
 {¶ 58} Assume that an individual dies as a result of lung cancer caused by asbestos exposure prior to filing suit, and that the individual was not treated by a board-certified specialist. Alternatively, assume that the decedent was treated by a board-certified specialist, but the specialist happened to spend twenty-six percent of his time consulting for potential tort actions. In either situation, no "competent medical authority" exists who can testify as to a prima facie case. The plaintiffs case ends at this point and is "administratively dismissed" without prejudice. The statute provides for reinstatement of the case upon proper proof of a prima facie case, but there is no conceivable way that the case can ever be resurrected, because the plaintiff died before the case began and cannot establish a physician-patient relationship with someone else.
 {¶ 59} In contrast, plaintiffs in the Denicola situation may use expert witnesses, rather than a treating physician. A Denicola plaintiff also has the ability to choose experts who meet the statutory criteria, regardless of what transactions may have existed in the past. However, the deceased plaintiff in the asbestos case cannot choose a new doctor who meets the statutory criteria, because the transaction in question has *Page 20 
already occurred and there is no possibility of ever altering those circumstances.
 {¶ 60} Justice Pfeifer made this point in his dissenting opinion inAckison, although he did not specifically discuss the differences between the statutes involved in Denicola and Ackison. Justice Pfeiffer noted the substantive changes in evidence required to prove a claim, and stressed that R.C. 2307.91(Z) "requires Danny Ackison, a dead man, to find an internist, pulmonary specialist, oncologist, pathologist, or occupational medicine specialist to become his treating physician." Id. at ¶ 92 (Pfeifer, dissenting).
 {¶ 61} Despite reservations, we are bound to follow the decision inAckison. Accordingly, the trial court erred in concluding that R.C. 2307.91(Z) cannot be retroactively applied.
 2. Substantial Contributing Factor — R.C. 2307.91(FF) {¶ 62} As noted, a prima-facie showing under R.C. 2307.92(D)(1) requires a "diagnosis by a competent medical authority that exposure to asbestos was a substantial contributing factor to the death of the exposed person." R.C. 2307.91(FF) defines a "substantial contributing factor" as both of the following:
 {¶ 63} "(1) Exposure to asbestos is the predominate cause of the physical impairment alleged in the asbestos claim.
 {¶ 64} "(2) A competent medical authority has determined with a reasonable degree of medical certainty that without the asbestos exposures the physical impairment of the exposed person would not have occurred."
 {¶ 65} Before H.B. 292 was enacted, plaintiffs had the burden on summary judgment of proving "exposure to the defendant's product and that the product was a *Page 21 
substantial factor in causing the plaintiffs injury." Horton v. HarwickChem. Corp., 73 Ohio St.3d 679, 686, 1995-Ohio-286, 653 N.E.2d 1196
(discussing causation in multi-defendant asbestos cases). InHorton, the Ohio Supreme Court adopted the following definition of "substantial factor" in the Restatement of the Law 2d, Torts (1965), Section 431, Comment a.:
 {¶ 66} "The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in a popular sense, in which there always lurks the idea of responsibility, rather than the so-called "philosophical sense," which includes every one of the great number of events without which any happening would not have occurred.'" 73 Ohio St.3d at 686.
 {¶ 67} In Wilson v. AC S, Inc., 169 Ohio App.3d 720, 2006-Ohio-6704,864 N.E.2d 682, the Twelfth District Court of Appeals rejected the argument that H.B. 292 substantively changes Horton's causation standard. The Twelfth District relied on Section 433 of the Restatement of the Law 2d Torts, which lists three items that are important in deciding if an actor's conduct is a substantial factor in bringing about harm to another. Id. at ¶ 97-104. These items are:
 {¶ 68} "(a) the number of other factors that contribute to produce the harm and the extent of the effect they have in producing it;
 {¶ 69} "(b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; *Page 22 
 {¶ 70} "(c) lapse of time." Restatement of the Law 2d, Torts (1965), Section 433.
 {¶ 71} The Twelfth District mentioned only the first item in Section 433-Subsection (a), and focused on only one of the comments to that item. The comment in question — "d." — states that:
 {¶ 72} "`d. There are frequently a number of events each of which is not only a necessary antecedent to the other's harm, but is also recognizable as having an appreciable effect in bringing it about. Of these the actor's conduct is only one. Some other event which is a contributing factor in producing the harm may have such apredominant effect in bringing it about as to make the effect of the actor's negligence insignificant and, therefore, to prevent it from being a substantial factor.'" Wilson, 2006-Ohio-6704 at ¶ 103, quoting from Comment (d) to Subsection (a) of Section 433 of the Restatement of the Law2d, Torts (1965) (Emphasis added in Wilson).
 {¶ 73} After quoting from Comment d., the Twelfth District concluded that the "predominant clause" element in R.C. 2307.91(FF) is consistent with the causation standard adopted in Horton. The Twelfth District was apparently struck by the use of similar words — "predominant" — and "predominate" in both Comment d. and R.C. 2307.91(FF).
 {¶ 74} In Ackison, the Ohio Supreme Court confessed that it was "perplexed" by the legislature's use of the word "predominate." 2008-Ohio-5243, at ¶ 36. The court found this word ambiguous, noting that it is capable of more than one meaning and is an apparent variation of the word "predominant." Id. at ¶ 36-44. The Ohio Supreme Court concluded that using the variation of "predominant," "would alter the common-law element of proximate causation and render the statute unconstitutionally retroactive." Id. *Page 23 
at ¶ 44. As a result, the Ohio Supreme Court declined to use this interpretation. The court was able to salvage the statute's constitutionality by construing R.C. 2307.91(FF)(1) in pari materia with R.C. 2307.91(FF)(2), which the court interpreted as imposing a "but for" test of causation. Therefore, the court concluded that:
 {¶ 75} "When R.C. 2307.91(FF)(1) and (2) are read in para materia, it appears that the two subsections were intended to require that asbestos exposure be a significant, direct cause of the injury to the degree that without the exposure to asbestos the injury would not have occurred. Thus, the statute reflects the common-law requirement that asbestos exposure be both a cause in fact and the direct cause of the plaintiff's illness. This is an embodiment of the common law, not an alteration of it." 2008-Ohio-5243, at ¶ 49.
 {¶ 76} In Ackison, the Ohio Supreme Court also rejected the argument that R.C. 2307.91(FF) had altered the causation standard for asbestos-exposure cases established in Horton v. Harwick Chem.Corp., 73 Ohio St.3d 679, 686, 1995-Ohio-286, 653 N.E.2d 1196. The Ohio Supreme Court distinguished Horton, stating that:
 {¶ 77} "Horton did not address the issue here, which is whether exposure to asbestos was `the predominate cause of the physical impairment' without which `the physical impairment * * * would not have occurred.' R.C. 2307.91(FF). The Horton inquiry, rather, pertained to determining which exposure to a particular defendant's asbestos-containing product, in a case involving multiple defendants, was sufficient to hold that defendant legally responsible."Ackison, 2008-Ohio-5243, at ¶ 51.
 {¶ 78} Justice Pfeifer's dissent in Ackison again criticized the majority's reasoning. Justice Pfeifer noted that: *Page 24 
 {¶ 79} "Latching on to the idea that the grammatically shaky word `predominate' might or might not mean `predominant,' the majority finds that the word is ambiguous and decides to interpret the statute in a manner `consistent with the common law.' To do so, it excises `predominate' from the statute:
 {¶ 80} "* * *
 {¶ 81} "So much for the vital skepticism underlying the separation of powers. The majority imputes constitutional motives to the General Assembly even though the General Assembly's true motives were revealed in the language the majority has seen fit to remove. I would find R.C. 2307.91(FF) unconstitutional." Id. at ¶ 96-98 (Pfeifer, dissenting).
 {¶ 82} While Ackison's construction of the statutory language is strained, the result is at least consistent with Ohio law, which incorporates the concept of dual causation. Notably, Section 433 of the Restatement does not address situations in which two or more causes have contributed to harm a person, and each cause may be found "substantial." One example of this situation could be an asbestos claim based on lung cancer of an exposed person who is a smoker. See R.C. 2307.92(C). In this example, a defendant who supplied asbestos products might argue that the plaintiff's cancer was caused solely or predominantly by the plaintiff's conduct in smoking, and not by exposure to asbestos or by the defendant's negligence. In this context, the Restatement of the Law 2d, Torts (1965), Section 432, provides that:
 {¶ 83} "(1) Except as stated in Subsection (2), the actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent. *Page 25 
 {¶ 84} "(2) If two forces are actively operating, one because of the actor's negligence, the other not because of any misconduct on his part, and each of itself is sufficient to bring about harm to another, the actor's negligence may be found to be a substantial factor in bringing it about."
 {¶ 85} Comment d. to Subsection (2) further states that:
 {¶ 86} "The statement in Subsection (2) applies not only when the second force which is operating simultaneously with the force set in motion by the defendant's negligence is generated by the negligent conduct of a third person, but also when it is generated by an innocent act of a third person or when its origin is unknown." Id.
 {¶ 87} In 1991, the Ohio Supreme Court cited Section 432, stressing that:
 {¶ 88} "It is a well-established principle of tort law that an injury may have more than one proximate cause. See Prosser and Keeton, Law of Torts (5 Ed. 1984) 266-268, Section 41; 2 Restatement of the Law 2d,Torts (1965) 432, Section 433; 1B Larson, Law of Workers' Compensation (1991) 7-612 to 7-941, Section 588 41.64; 1 Ohio Jury Instructions (1988) 183, Section 11.10 (There may be more than one proximate cause.'). Ohio case law also supports this fundamental tenet of tort law: `In Ohio, when two factors combine to produce damage or illness, each is a proximate cause.'" Murphy v. Carrollton Mfg. Co. (1991),61 Ohio St.3d 585, 587-88, 575 N.E.2d 828. (Emphasis added and end citation omitted.)
 {¶ 89} The same concept was applied in Norris v. Babcock WilcoxCo. (1988), 48 Ohio App.3d 66, 67, 548 N.E.2d 304. Norris involved asbestos exposure and the defense that the decedent's cancer was caused by smoking, The court of appeals court found that "the basic principles of proximate causation are applicable to dual causation *Page 26 
of occupational diseases. * * * In Ohio, when two factors combine to produce damage or illness, each is a proximate cause."48 Ohio App.3d at 67.
 {¶ 90} The Ohio Supreme Court also emphasized in Murphy that the issue of proximate cause is a "factual issue to be determined by the factfinder." 61 Ohio St.3d at 590. Had Ackison not construed R.C. 2307.91(FF) in the manner it did, H.B. 292 would have effected a substantial change in the law and would have imposed new burdens, by eliminating the concept of dual causation and by requiring trial courts, rather than juries, to decide issues of proximate cause.
 {¶ 91} Accordingly, the trial court erred in concluding that R.C. 2307.91(FF) cannot be retroactively applied.
3. Substantial Occupational Exposure — R.C. 2307.92(C) and (D)
 {¶ 92} R.C. 2307.92(C)(1) (c) and (D)(1) (c) require asbestos claimants to establish either of the following, as part of the prima facie case:
 {¶ 93} "(i) Evidence of the exposed person's substantial occupational exposure to asbestos;
 {¶ 94} "(ii) Evidence of the exposed person's exposure to asbestos at least equal to 25 fiber per cc years as determined to a reasonable degree of scientific probability by a scientifically valid retrospective exposure reconstruction conducted by a certified industrial hygienist or certified safety professional based upon all reasonably available quantitative air monitoring data and all other reasonably available information about the exposed person's occupational history and history of exposure to asbestos."
 {¶ 95} "Substantial occupational exposure" is now statutorily defined in R.C. 2307.91 (GG) as: *Page 27 
 {¶ 96} "employment for a cumulative period of at least five years in an industry and an occupation in which, for a substantial portion of a normal work year for that occupation, the exposed person did any of the following:
 {¶ 97} "(1) Handled raw asbestos fibers;
 {¶ 98} "(2) Fabricated asbestos-containing products so that the person was exposed to raw asbestos fibers in the fabrication process;
 {¶ 99} "(3) Altered, repaired, or otherwise worked with an asbestos-containing product in a manner that exposed the person on a regular basis to asbestos fibers;
 {¶ 100} "(4) Worked in close proximity to other workers engaged in any of the activities described in division (GG)(1), (2), or (3) of this section in a manner that exposed the person on a regular basis to asbestos fibers."
 {¶ 101} After reviewing the above definition, the trial court concluded that
the requirement of a "substantial occupational exposure" directly contradicts the standard that the Ohio Supreme Court adopted inHorton, 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196. TheHorton standard indicated that:
 {¶ 102} "For each defendant in a multidefendant asbestos case, the plaintiff has the burden of proving exposure to the defendant's product and that the product was a substantial factor in causing the plaintiff's injury. A plaintiff need not prove that he was exposed to a specific product on a regular basis over some extended period of time in close proximity to where the plaintiff actually worked in order to prove that the product was a substantial factor in causing his injury."Horton, 73 Ohio St.3d at 686.
 {¶ 103} Because Horton rejected time and qualitative exposure requirements, the trial court concluded that H.B. 292 substantially alters existing law by *Page 28 
imposing those requirements. Defendants contend that this is erroneous, because Horton only involves the specific causative standard to be applied to each defendant in multi-defendant cases, or the causative role of exposure to a particular defendant's product — not the general causative role of asbestos. Again, the Ohio Supreme Court settled this point in Ackison.
 {¶ 104} The plaintiff in Ackison contended that the statutory definition in R.C. 2307.91(GG) was a legislative attempt to adopt the"Lohrman test," which the Ohio Supreme Court had specifically rejected in Horton. Under the Lohrman standard:
 {¶ 105} "To support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." Lohrmann v.Pittsburgh Corning Corp. (C.A. 4, 1986), 782 F.2d 1156, 1162-63.
 {¶ 106} Lohrman did not outline specific time frames, but noted that its rule was in keeping with the opinion of the plaintiffs medical expert, who "testified that even thirty days exposure, more or less, was insignificant as a causal factor in producing the plaintiff's disease." Id. at 1163. The only other guidance in Lohrman about the specific meaning of the time frames is that exposure to an asbestos covering on ten to fifteen occasions of between one and eight hours each, during thirty-nine years of employment, "was not sufficient to raise a permissible inference that such exposure was a substantial factor in the development" of the plaintiffs asbestosis. Id.
 {¶ 107} In Horton, the Ohio Supreme Court rejected theLohrman standard, noting that: *Page 29 
 {¶ 108} "We are asked in this case to set forth the appropriate summary judgment standard for causation in asbestos cases, and specifically, whether Ohio courts should adopt the Lohrmann test. While this court is aware of the docketing problems that may exist with asbestos-exposure cases, we will not cause plaintiffs in such cases to carry a greater summary judgment burden than other personal injury plaintiffs. In our view, the Lohrmann standard casts judges in an inappropriate role, is overly burdensome, and is unnecessary."73 Ohio St.3d at 682-83.
 {¶ 109} The Ohio Supreme Court criticized the Lohrman standard on various grounds, including the fact that it causes trial judges to usurp the traditional role of medical or scientific experts and establishes a "mechanistic test which no contrary expert testimony can overcome." Id. at 683. The court also criticized the temporal aspects of the standard as "scientifically dubious," and noted that the "proximity aspect * * * chooses sides in a scientifically disputed area." Id. at 684. Furthermore, the court remarked that the test had resulted from "law and public policy outstripping the science at the heart of the asbestos problem." Id. at 685. The court finally objected to the fact that theLohrman standard:
 {¶ 110} "invites a trial judge into the domain of the jury. The temporal aspects of the test, frequency and regularity, are subject to an unlimited range of possibilities. How many exposures does it take to meet the acceptable level of frequency? Can a judge be sure that one less exposure could not have caused asbestos-related disease? What is a regular basis? Does intense exposure over a shorter duration reduce the regularity requirement? In regard to proximity, how close to the product is close enough? Will a few feet make the difference? *Page 30 
 {¶ 111} "The Lohrmann test does not call for simple responses which follow directly from a presentation of the evidence. Instead, the test involves a weighing of the plaintiff's evidence on the sliding scale of the test's three loosely defined criteria. The inquiry by the trial judge should be whether there is evidence of exposure and evidence tying that exposure to the disease. Whether that evidence is strong enough to prove causation is an issue for the jury." Id. at 686.
 {¶ 112} In Ackison, the Ohio Supreme Court agreed that R.C. 2307.91(GG) would be unconstitutionally retroactive if it were interpreted as a legislative attempt to adopt the Lohrman test.Ackison, 2008-Ohio-5243, at ¶ 49. However, the Ohio Supreme Court rejected this idea for two reasons. The first reason was that the plaintiff in Ackison had failed to show how the suggested interpretation would affect her claim. Specifically, the "substantial occupational exposure" requirement applies only to lung cancer claims, not to claims, like Ackison's, that are based on cancer of the esophagus. Id. at ¶ 59. See, also Ackison v. Anchor Packing Co., Lawrence App. No. 05CA46,2006-Ohio-7099, at ¶ 5 (indicating that the plaintiff, Ackison, suffered from "distal esophagus cancer," not lung cancer). However, this point of distinction does not apply to the case before us, because Arthur Neal did suffer from lung cancer, and the claim is one for wrongful death.
 {¶ 113} As an additional reason for its decision, the Ohio Supreme Court concluded that 2307.91(GG) does not adopt the Lohrman test. In this regard, the court stressed that:
 {¶ 114} "The Lohrmann test was specifically directed at the merits of an asbestos claim. In sum, it holds that in order to establish causation, `there must be *Page 31 
evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked.' * * *
 {¶ 115} "While H.B. 292 defined the term `substantial occupational exposure' in R.C. 2307.91(GG), the bill simultaneously enacted R.C. 2307.96. The latter provision legislatively adopted theLohrmann test as a substantive requirement for proving an asbestos-related claim. R.C. 2307.96(B); H.B. 292, Section 5, 150 Ohio Laws, Part III, 3992-3993. The General Assembly expressly acknowledged that its specific intent was to adopt the Lohrmann test and that doing so was contrary to our syllabus language in Horton. Id. Consequently, the General Assembly explicitly made that provision prospective only, reflecting the substantive nature of the change. R.C. 2307.96(C). Because the General Assembly confined its adoption of theLohrmann test to the prospective provisions of R.C. 2307.96, we cannot conclude that its simultaneous adoption of R.C. 2307.91(GG) was substantive in nature. The definition, as it relates to the `procedural prioritization' of asbestos claims, * * * does not alter the substantive law of causation in the same vein as the adoption of R.C. 2307.96. We conclude that R.C. 2307.91(GG) is consistent with common law and not unconstitutionally retroactive." Ackison, 2008-Ohio-5243, at ¶ 60-61.
 {¶ 116} Once again, Justice Pfeifer was not impressed with the majority's analysis, and argued that:
 {¶ 117} "The majority seems to say that R.C. 2307.91(GG) is not substantive because in R.C. 2307.96(C), the General Assembly admitted it was altering a substantive requirement whereas it did not make such an admission in regard to R.C. 2307.91(GG). In other words, if R.C. 2307.91(GG) were substantive, the General *Page 32 
Assembly would surely admit to it.
 {¶ 118} "But the requirements of R.C. 2307.91(GG) are indeed substantive-they kick certain plaintiffs out of the courthouse. A claimant cannot make a claim for wrongful death or lung cancer without proving five years of exposure to asbestos. Prior to H.B. 292, there was nothing remotely like that requirement in the law. A person with four and a half years of exposure could state a claim prior to the passage of H.B. 292; now that same person would have no claim. In Horton, this court `decline[d] to establish a formulaic approach in an area which defies that kind of analysis.' * * * Today, the majority finds that the General Assembly's adoption of a formulaic approach does not constitute a substantive change in the law.
 {¶ 119} "The majority says that a retroactive adoption of theLohrmann test would be a substantive change. However, in R.C. 2307.91(GG) adopts a more stringent version of the Lohrmann test, and the majority calls that change merely procedural. Why? No reason is given." Id. at ¶ 108-110. (Pfeifer, dissenting).
 {¶ 120} Because we are bound by the majority decision inAckison, we must conclude that the trial court erred in holding that R.C. 2307.91(GG) could not be retroactively applied. Accordingly, Appellants' First Assignment of Error is sustained. Owens-Illinois's assignment of error is also sustained, insofar as it raises error in the trial court's conclusions on the retroactive application of H.B. 292. The remainder of Owens-Illinois's assignment of error will be overruled as moot, for the reasons that follow.
 II {¶ 121} Defendants' Second Assignment of Error is as follows:
 {¶ 122} "THE TRIAL COURT ERRED BY CONCLUDING THAT APPELLEE *Page 33 
HAS SUBMITTED SUFFICIENT EVIDENCE TO DEMONSTRATE AN ACCRUED CAUSE OF ACTION FOR ASBESTOS INJURY (JAN. 18, 2007 ORDER)."
 {¶ 123} Under this assignment of error, Defendants contend that even if prior law is applied, Neal failed to submit sufficient evidence to show that the cause of action for asbestos injury had accrued. Before addressing this point, we note that Owens-Illinois did not assign this error separately, but has raised the same point in the "Issues Presented," by contending that Neal failed to make a prima-facie showing under the standards of the prior law. Owens-Illinois also incorporated this issue into the wording of its sole assignment of error, along with statements about the retroactive application of H.B. 292.
 {¶ 124} H.B. 292 contains a savings clause that is applied where the trial court finds that a party's substantive rights have been impaired in violation of Section 28, Article II, of the Ohio Constitution. In that circumstance, the trial court "shall determine whether the plaintiff has failed to provide sufficient evidence to support the plaintiff's cause of action or the right to relief under the law that is in effect prior to the effective date of this section." R.C. 2307.93(A)(3)(b). As with the prima facie case under the new standards, the trial court must administratively dismiss the action without prejudice if the plaintiff fails to provide sufficient evidence. Upon submitting sufficient evidence, the plaintiff can then move to reinstate the case.
 {¶ 125} The trial court concluded that the pre-existing law, R.C. 2305.10, did not create certain elements that claimants must meet or face dismissal. The trial court stressed that standards for dismissal are already built into the Ohio Rules of Civil Procedure, by allowing motions to dismiss for failure to state a claim. The court noted *Page 34 
that, in contrast, R.C. 2305.10 solely concerns statute of limitations issues. After reviewing the evidence, the court concluded that Arthur Neal's injuries were "consistent with asbestos exposure" and that Neal was not required to demonstrate causation for a claim to accrue under R.C. 2305.10. The court held that accrual of a claim only requires competent medical authority, as that term has been defined by common law, to find a relationship between the injury and asbestos exposure. The trial court, therefore, held that Neal had met the appropriate burden under the pre-H.B. 292 standards.
 {¶ 126} Defendants contend that the trial court erred because the evidence was not sufficient under established Ohio law. According to defendants, the only evidence presented was an X-ray report, which indicated findings "consistent with pneumonoconiosis." Defendants argue that pre-existing law requires more. In response, Neal argues that the case should be allowed to proceed because Arthur Neal was diagnosed with malignant adenocarcinoma of the lung, which is an asbestos-related illness. Neal contends that this is all that is required because the common law standard only requires that asbestos has caused an alteration of the lining of the lung.
 {¶ 127} In view of the disposition of the First Assignment of Error, this assignment of error is moot. On remand, the trial court must apply H.B. 292 and must administratively dismiss Neal's claim without prejudice, because Neal has admitted that she cannot meet the requirements for establishing a prima facie case. This is the only option under the applicable law.
 {¶ 128} Defendants' Second Assignment of Error is overruled as moot. *Page 35 
 III {¶ 129} Defendants' First Assignment of Error having been sustained, Defendants' Second Assignment of Error having been overruled as moot, and Owens-Illinois's sole assignment of error having been sustained in part and overruled in part as moot, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
WOLFF, P.J., and BROGAN, J., concur.
[1] The Defendants-Appellants listed on the appellate court pleadings are as follows: Amchem Products, Inc., Certainteed Corp., H.B. Fuller Co., Union Carbide Corp., Anchor Packing Co., Garlock Sealing Technologies LLC, Inc., Riley Stoker Corp., Mobil Corp., BOC Group, Inc. (f/k/a Airco, Inc., Hobart Brothers Co. and Lincoln Electric Co.), A.W. Chesterton Co., Honeywell International, Inc., John Crane, Inc., Rapid American Corp., Ohio Valley Insulating Co., Inc., General Electric Co., CBS Corp./Viacom, Inc./Westinghouse, McGraw Construction Co. and McGraw/Kokosing, Inc., Mallinckrodt Group Inc. (f/k/a International Minerals Chemical Corp.), Foster Wheeler Energy Corp., Georgia-Pacific LLC (f/k/a Georgia Pacific Corp.), Uniroyal Holding Inc. and Viacom, Inc. (Westinghouse), International Minerals and Chemical Corp., Crown, Cork, Seal Co., CRS Limited, Clark Industrial Insulation and Wheeler Protective Apparel, Inc., Union Boiler Co., R.E. Kramig, Inc., Minnesota Mining and Manufacturing, Metropolitan Life Insurance Co., Maremont Corp., Frank W. Schaefer, Inc., Beazer East Inc. and Ingersoll Rand, Pfizer, Inc. and Quigley Co., Inc., Cleaver Brooks Co., Allied Corp., Insul Co., Inc., George P. Reintjes Co., Kelly-Moore Paint Co., Inc., Andco, Inc., C.E. Thurston Sons, Inc., General Refractories, Co., Bigelow Liptak Co., and Owens-Illinois, Inc. These parties will be referred to collectively as defendants, defendants-appellants, or appellants.
[2] Am. Sub. H.B. 292, 150 Ohio Laws, Part III, 3970, was codified as R.C. 2307.91, et. seq., and will be referred to as H.B. 292.
[3] Based on the evidence presented, it is not clear that Neal would be designated a "smoker" for purposes of R.C. 2307.92(C). R.C. 2307.91
(DD) defines a smoker as "a person who has smoked the equivalent of one-pack year, as specified in the written report of a competent medical authority pursuant to sections 2307.92 and 2307.93 of the Revised Code, during the last fifteen years." Appellants did not present a written report in the trial court from a "competent medical authority" to indicate that Neal would be statutorily classified as a smoker. Therefore, we doubt that R.C. 2307.92(C) would apply to the present case. See Penn v. A-Best Prods. Co., Franklin App. Nos. 07AP-404, 07AP-405, 07AP-406, 07AP-407, 2007-Ohio-7145, at ¶ 26 (noting that R.C. 2307.91(DD), as written, only directs how one is to be deemed a smoker, and has no provision explaining how one must prove he is a non-smoker). We note that the parties to the present case have not raised this point, although Owens-Illinois has commented on Neal's alleged smoking history. The trial court also did not discuss which specific subsection applied to Neal, beyond noting that Neal's action was brought for wrongful death and survivorship.
[4] R.C. 1.48 states that: "A statute is presumed to be prospective in its operation unless expressly made retrospective."
Copies mailed to:
Richard Reverman
Kelly Thye
Richard D. Schuster
Nina I. Webb-Lawton
Anthony L. Osterlund
Rebecca C. Sechrist
Hon. Mary Katherine Huffman *Page 1